Thank you, Your Honors. Edward Hooper, the petitioner of Daniel Clarke. I'd like to reserve four minutes for rebuttal time, please. Thank you. Mr. Clarke is serving a 33-year sentence after being denied the most fundamental of his trial rights, the right to confront his accuser. And in a case with no DNA evidence, no medical evidence, no sex assault kit, no physical evidence whatsoever, no percipient witnesses outside of his accuser, his stepdaughter, M, it was critical that Mr. Clarke be permitted to have the opportunity to cross-examine her on issues bearing on her credibility, on the veracity of her testimony, and also to build a record from which he could argue his defense. Now, the trial court limited cross-examination in three particular areas that I'd like to talk about today. The first is with respect to her bipolar disorder, the medication she took to manage her condition, and the specific manifestations of that condition. The second is when the trial court precluded cross-examination as to M's heightened and unusual interest in sex for her age. And then thirdly, the trial court precluded cross-examination around the circumstances of M learning that her best friend, K, was also molested. Now, in light of these violations, Mr. Clarke contends that there was an objectively unreasonable application of clearly established Federal law as reflected through the Sixth Amendment of the United States Constitution and also through the Supreme Court line of cases Davis v. Alaska, Delaware v. Van Aerstal, and Michigan v. Lucas. Now, in order for this Court to find whether there was an objectively unreasonable application of clearly established Federal law, the Court engages in a two-part inquiry. First, the Court asks whether the proffered cross-examination would sufficiently bear on the credibility of the witness such that the jury could have had a different assessment of her. Now, if the Court finds that the first prong is satisfied, it moves to the second, which is whether any of the countervailing interests actually supplied by the trial court could supply reasonable justification to curtail Mr. Clarke's confrontation. Now, if the Court finds that the first prong is satisfied, it moves to the second,  court could supply reasonable justification to curtail Mr. Clarke's confrontation. Did you try the case below? I did not, Your Honor. Okay. When the case was tried below, was the victim cross-examined on how she learned the details of what she says happened to her? On how she learned the details? Yes. Oh, Your Honor, no. She was not permitted to — the defense was not permitted to ask those questions, and I think that highlights one of the major problems in the area of confrontation here. In Hawley v. Yarborough, which is this circuit court case here, it was held that an 11-year-old — had the jury known of an 11-year-old victim's sexual precociousness that could have affected its assessment of her. Now, in this case also, the defense wanted to show that M had specific sources of sexual knowledge that she would later accuse Mr. Clarke of committing those same acts. In order for him to develop the record to argue his defense, he needed the opportunity to cross-examine the victim, but that wasn't allowed. Compounding this, Your Honor —  There was cross-examination, but not in any way that would have effectively given him his right to confront under the confrontation clause. And the reason I say that, Your Honor, is because if he is not permitted to raise an alternative inference to the jury, alternative to the one of him committing the crime, then he hasn't had the chance to effectively confront her, per Davis v. Alaska, which says that a defendant must be able to — The prosecution, the DA, didn't attempt to show the victim as some naïve, young, innocent, young person. That's correct, Your Honor, and I think that's just clear that — In fact, she was somewhat — she made a statement on the stand to the effect that she was almost embarrassed to say that she was interested in those things. Your Honor, I think that's rebutted by the record. Insofar as the M did state, quote, I'm a kid, I shouldn't be thinking about this kind of stuff. So to the extent that the trial court believed — How old was she at the time of the — She was 13 years old. At the time of her testimony or at the time of the incident? At the time of the incident, Your Honor. At the time she testified, how old was she? I don't recall. I can supply that information. Probably at least 14, right? I'm guessing as such, or in the record at least, the trial court stated in precluding cross-examination as to her specific sources of knowledge and heightened sexual interest, that the judge would not be surprised if the jurors would believe that a 13-year-old might have an alternative source for her sexual knowledge. So let me ask you this. What questions would the lawyer, her — would defense counsel want to ask her? Would they want to — would want to have asked her to bring out this area or to flesh out this area that you're considering? As to M's heightened interest in sexuality, the defense wanted to bring in two particular instances. One was where the witness, Shannon Marie, stated that she saw the victim watching videos of the exact sexual act she would later accuse Mr. Clark of committing. That was directly relevant. The second was an incident where, at 7 years old, M was involved in a situation where there was inappropriate touching described by the family members as masturbation of a boy. Now, again, going back to Holly v. Yarborough, had the jury known about the sexual precociousness of the child and somebody who represented herself to be a kid, it could  Furthermore, because as a result of her bipolar disorder, M was taking medication Is there any claim that she was involved in any masturbation with, you know, physical touching of the defendant? Well, Your Honor, one of the attempt — the attempt count, the 15th count, was a situation wherein she accused Mr. Clark of requesting that — that act and that she denied it and left. So it was relevant to the case, yes. It was — it was — the witness watched the victim watch a video, a pornographic video, of the exact physical act. And what the defense sought to do was introduce an alternative reason for this little kid's sexual knowledge. What's more is that it's — it was undisputed at trial that M had been diagnosed with bipolar disorder and had been taking medications since 7 years old. Now, as part of the prosecution — prosecution's central theme, what — pardon me — the prosecution did allege that Mr. Clark gave to M Darvissat and Xanax, two drugs, to make her sleepy in an effort to molest her. M did testify that they did, in fact, make her sleepy. The defense proffered to the trial court that they would like to introduce evidence of her statement to an officer saying that she was not made as sleepy or was more tolerant to the Darvissat or Xanax as a result of the medication she was taking for her bipolar disorder. Now, to the extent that the jury believed the logical inconsistencies within her — Was there any experts offered to — did the defense want to present any experts about the effects of a bipolar medication? There were not, Your Honor. And that was a point made by the trial court. However, we believe that this misunderstood the defense. It's pretty sophisticated evidence about what effects — Absolutely, Your Honor. However — — medication might have on one's ability — I would wholly agree with that, Your Honor. And in the pharmacological sense, if that was what the defense was trying to show, then, yes, it should have had an expert. And in this case, though, it was not trying to show or prove medically the effects, but rather to rebut the inference that Mr. Clark's favorable treatment of M was as a result of him grooming and sexually favoring her, when, in fact, she was diagnosed at age 7, and the family had already accommodated her erratic, violent, and manipulative behavior by treating her nicer. So what the prosecution and what the State was able to do was to list it as testimony as to Mr. Clark allegedly grooming her, when, in fact, that was not the case and it was the wrong inference. Is that the argument that the DA made at the close of the trial? I'm sorry, Your Honor? Is that the argument that the DA made at the close of the trial, that he was grooming her? It was, Your Honor. It was, in fact. And he stated at the closing, Mr. Clark likes to build relationships, spent a long time building that relationship, and I'm quoting from 1730 from the record. And then later, the next page states that he still likes to touch the little girls that he builds relationships with. So there was testimony that was permitted about Mr. Clark's favorable treatment of M. But without his ability to cross-examine her, as to the bipolar disorder, he was unable to rebut the inference that the reason he treated her that way was because he was grooming her, when, in fact, the whole family treated her preferentially as a way to accommodate a severe psychiatric condition. So going back to Your Honor's earlier point, it wasn't essential to have an expert regarding the psychiatry or the pharmacology of bipolar disorder, but rather it was to raise a defense from which Mr. Clark could argue his innocence. Now, I'd like to turn Your Honor's attention also to the circumstances around the trial court precluding cross-examination as to K, M's best friend, sharing the circumstances around her molestation. Now, the trial court stated that it would not allow that testimony and it wouldn't allow examination into that subject because the court believed it was not relevant. However, as Mr. Clark did so proffer, he sought to establish yet another source of M's sexual knowledge, that is, in this conversation with K, where K described actual sexual – an actual sexual instance, to also establish that M lied about her own victimization in an effort to become closer friends with K. He was also denied the opportunity to establish that K did not believe her and did not report the lie. That sounds a bit speculative. It is, Your Honor, and that's entirely the point of cross-examination, that at the beginning of cross-examination, as to an incident that the defense had no reason and no way to know about, as this circuit has said, counsel cannot – often cannot know in advance what pertinent facts may be elicited on cross-examination. And for that reason, it is necessarily explanatory and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply. Now, I think that's apt here. Let me shift your argument just a little bit. So let's just assume for a moment that you established the unreasonable application of the Sixth Amendment with respect to this – these cross-examination issues you're talking about. Don't you also have to establish prejudice under Brecht? Your Honor, I would like to answer your question. I note that I'm out of time as far as this goes. Well, you want to reserve some time, but I want to ask you a question. I want you to talk about Brecht for a minute. Yes, Your Honor. Now, the State claims that under Brecht and harmless error that – pardon me. The State claims that citing to Brecht raises the harmless error defense. That's incorrect under circuit precedent. Under Gonzales-Flores, this circuit court has stated that a claim that is cited to with no substantive argument is deemed abandoned. Now, in light of the Supreme Court's case in Wood v. Millyer, making the distinction between forfeiture, a relinquished or an inadvertent relinquishment, an abandon – or, excuse me, a waiver, an intentional abandonment, and in light of the fact that the Supreme Court has said that forfeited, that in no instances can a waived defense be re-raised or raised to a sponsoring. Bringing this back to what has happened here, the citation to Brecht, because under circuit law it's been deemed – the argument has been deemed abandoned, the Brecht citation and the harmless error standard would be the incorrect one to apply. I looked at the district court's, the government's, the State's brief that was filed in the district court, and they do, you know, they lay out the basics of the case. They do – they did allege – I mean, they laid out the Brecht standard and framework, but then they just argued there was no constitutional violence, no constitutional error in any – on any of the claims that were raised. Your Honor, Brecht – I didn't take it from that, that they were – that it was a blatant abandonment of the claim, even though they didn't flush it out. Your Honor, the Supreme Court – this circuit precedent does say that without substantive argument, it's deemed abandoned. And it's – this is not – this is not a controversial position to take. This would be consistent with the Third, the Fifth, the Sixth, the Seventh, and the Tenth circuits, which have decided, even pre-Wood, that it would be inappropriate to raise it. It's the rest of your time. Thank you, Your Honor. Good morning. May it please the Court. My name is Pam Critchfield with the California Attorney General's Office, representing Respondent. Appellant claims here that the State's rejection of his Confrontation Clause claim is objectively unreasonable. The argument is meritless. The United States Supreme Court instructs that the Confrontation Clause guarantees an opportunity for effective cross-exam, not cross-exam that is effective in every way and to whatever extent the defense may wish, which is what he's arguing. The trial court here had numerous colloquies with the defense counsel and the prosecutor about the types of questions or areas that the defense wanted to go into. If you read the trial court's rulings on those areas, it's objectively reasonable. Let me tell you what concerns me on the cross-examination issue. Okay. And perhaps you can enlighten me. Okay. As a result of the court's ruling that the victim could not be cross-examined about having watched videos of the same sexual act that was involved in the charges, in other words, the judge had ruled that and the prosecution – I take it you didn't try the case. No, no. The prosecution knew this when they stood up for final argument. But my reading of the transcript, and I'm looking at 1733, the State then argued to the jury that the only way the victim could have known about this kind of level of detail about the sexual act she was forced to observe was that she observed it. Now, that suggests to me that not allowing the cross-examination deprived the defense of an opportunity to offer an alternative theory. Tell me why that was a question. Well, first of all, there was – there were 14 counts altogether. And all but one was – didn't involve masturbation. It was either digital penetration or oral copulation, which, as the trial court found, are very pretty basic sexual abuse charges. The very last count that occurred, just – I think it was the very last thing that the appellant ever did to her was he called her up into the room, pulled his pants down, asked her if she would masturbate him or touch him. She said no and ran out of the room. That's the extent of the masturbation that she allegedly knew about. The judge found, look, kids know about this stuff. You don't need to put on a bunch of evidence that she's watched a bunch of films of it in order to let the jury know that she's got all this other sexual knowledge. This is very basic stuff. I get your point on the number of counts and that this was just one, but that wasn't the argument that bothers me. And the argument that bothers me was the argument that said this is the only way she could have known that level of detail about this particular sexual act, which in the broad world of available stuff that's in the record, we know that's not true. And the prosecution knew it was not true when they made that argument. They took advantage of the fact that the trial judge had said you can't cross-examine her about that. Okay. I see what you're saying. I you know, the ruling of the trial court at the time, just backing up, was that the masturbation occurred or that little incident occurred after, occurred, that incident and the other incidents, the other counts, occurred before the trial   made that argument before this witness said, alleged that she saw the girl watching  I also think you're, you're That sounds like weight, not admissibility to me. I think you're also concerned, Your Honor, that somehow she was presented, she was not presented as a young, unsophisticated, naive girl. I accept that. Okay. But, but Remember, argument by counsel is not evidence either. And that was one snippet that you're referring to. And honestly, I have not read that exact portion of what you're talking about. But if you read the entire closing by both sides, she was not presented as a, as a, as a knowledgeable, naive I might have a different view of this, this particular thing. And again, I take into consideration your argument about this was simply one count. I might have a different view of this if the prosecution at the trial had not made that argument. But in fact, the prosecutor argued to the jury, this is the only way this young woman could have known about this. For that particular count, though, Your Honor, or the whole thing? He was referring to all of it, I believe. I think he was referring to, how is she, how does she know about this except that it was done to her? I don't think he said, how did she possibly know about masturbation, male masturbation, except that he pulled his pants down in front of her in the bedroom. I, that's not the argument. I think the argument was fair. And he was arguing, she, there's no evidence that, and the questions they wanted to ask her, I mean, that was one of them. And the other was the incident when she was 7, which I fully briefed in my, in my brief. And then beyond that, I would argue, harmless error. And I think Judge Breyer, in his opinion, his order denying the petition, does a very good harmless error argument. You would have to find that it was an example. You certainly didn't advance any harmless error argument in your brief before the district court. No, I did not. You lay it out, you recognize it exists, and then I read to the end, and there's no discussion whatsoever as to why there's no harm, why this was just. But you would have to find it was an abuse of discretion on the part of Judge Breyer to have reached it sua sponte, and there is no authority for that. In fact, the authority is. Is there a case law, you know, allowing? Well, I cited an Eleventh Circuit case. It's our case law. The Hitman Council just stood up there and argued it. And I don't know that case. But under our cases. There's the, there's an unpublished case called Malonzy, Malonzy, that I cited, where the, the, this Court sent it back for a harmless, had, there had been no harmless error argument and, or analysis, and this Court sent it back and said it, it wasn't waived. I mean, Judge Breyer did address it. Correct. He found it wasn't. Correct. If there are no further questions, I would submit it on my brief. No questions here. Thanks. Thank you. Thank you, Your Honors. The case I cited to was Gonzalez-Flores, and it was also cited to by the government. And in particular, I'd like to read some language from that case that is, that is useful here with respect to the would-be milliard and the waiver of harmless error defense argument. This Court has stated that, even more troubling, the practice, that is, if we allow courts to raise waived arguments by the State on their own, the practice may unfairly tilt the scales of justice by authorizing courts to construct the government's best argument for it without providing the defendant a chance to respond. Furthermore, harmless error is only appropriate under Gonzalez-Flores, which we do not believe appropriate, again, to apply, given the Supreme Court's case in would-be milliard. But it did conclude, this Court did conclude, that a sua sponte recognition of an error of the error's harmlessness is appropriate only where the error is not reasonably debatable. Now, here I think we have had a reasonable debate, and there is a reasonable debate about whether the proffered cross-examination was, in fact, harmless. And, again, in a case with no physical evidence at all, no DNA evidence, no medical evidence, and no percipient witnesses, despite the fact that 60 percent of the accounts occurred with another person in the room, and that person testified and did not testify as to any of them, it was critical in a situation in a case like this for Mr. Clark to have the opportunity to fully cross-examine him. I notice my time is out. I thank Your Honors. Roberts. Thank you. Thank you, counsel, for your arguments. We appreciate them very much. Very helpful.
judges: Hawkins, Gould, Paez